THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PATRICK JUDSON 'CAPRIO, Appellant.

Third Department, February 27, 1975.

*Louis J. Casella, Public Defender (John T. Hillis* of counsel), for appellant.

*Patrick D. Monserrate, District Attorney,* for respondent.

LARKIN, J.   This is an appeal from a judgment of the County Court of Broome County, rendered October 10, 1973, upon a verdict convicting the defendant of the crime of murder in violation of section 125.25 of the Penal Law.

On December 28, 1972, Christopher Caprio, age 16 months, died of cardiorespiratory arrest, two hours after brain surgery.   The father Patrick and the mother Marilyn were indicted for murder and manslaughter in the first and second degree. The action against the mother was severed and Patrick Caprio was tried and convicted of murder.

Christopher Caprio was born August 17, 1971 a normal child. Before he was two months old, he entered the hospital suffering from multiple broken ribs and bruises, eye hemorrhages and breathing difficulties caused, the doctors agreed, by considerable external force.   After his release from the hospital on this and later occasions, he was sent to live with foster parents and after a time was returned by them to his parents in good health.   On each occasion that he was returned to his parents, it would be but a short period of time before he would be hospitalized again in severe physical condition until finally on January 3, 1973 a neurosurgeon operated to eliminate a buildup of fluid in his head and to treat a subdural hemotoma.   Christopher lived but two hours after the completion of the surgery.   Both the neurosurgeon who performed the operation and another neurosurgeon who conducted the post-mortem examination, agreed (1) that surgery was necessary and that there was no reasonable alternative available, and (2) that the stress of surgery on top of the infant's already weakened and handicapped system caused his death.

The jury trial was replete with testimony which indicated a continued brutality toward the child and a conclusion that Patrick Caprio, either alone or in concert, was the source of that brutality.   His own statements as to the cause of the child's condition were contradictory in nature and suggested accidental causes, e.g., playing, feeding, while the doctors testified the injuries could only have come from external blows of severe degree.

The defendant raises several points in his extensive brief which require comment.   The indictment, under which the defendant was tried, covered all conduct leading to the death of Christopher between June 10, 1972 and December 28, 1972. The trial court admitted into evidence proof of prior injuries to Christopher dating back to October 9, 1971.

The general rule in New York prohibits the use of evidence of uncharged crimes if offered for no other purpose than to raise an inference that the defendant is of a criminal disposition and likely to have committed the crime that is charged (*People* v. *McKinney*, 24 N Y 2d 180). Proof of uncharged criminal acts is admissible to show the absence of mistake or accident as far as the charged acts are concerned (*People* v. *Molineux*, 168 N. Y. 264). Such evidence is especially warranted in cases, such as the one before us, where the crime charged has occurred in the privacy of the home and the facts are not easily unraveled. The admissibility of evidence of a child's prior injuries has been determined by the Court of Appeals in *People* v. *Henson* (33 N Y 2d 63, 70).

The defendant urges that a limiting instruction should have been given by the trial court to the jury to warn them not to use evidence of the October, 1971 injuries to young Christopher and causation of those injuries by the defendant, as proof that the defendant committed the criminal acts charged in the indictment. The evidence of prior acts was admitted to negate the defense of accident or mistake and, thus, is admissible as proof of the crime charged in the indictment. Nor was there objection, nor request, to the court's charge.

The defendant contends that he made clear to the police his intention to obtain a lawyer and that thereafter the police were bound to warn him that his statements may be used against him (*Miranda* v. *Arizona*, 384 U. S. 436). He was not in custody at the time so his contention is without validity (*People* v. *McKie*, 25 N Y 2d 19; *People* v. *Arthur*, 22 N Y 2d 325).

This court has previously upheld the introduction of photographs as being material and competent evidence in such cases (*People* v. *Hampton*, 38 A D 2d 772).

In the instant case the proof, although circumstantial, reaches the standard set in *People* v. *Poplis* (30 N Y 2d 85). The trial record reveals physical abuse of the infant and a depraved indifference to his condition from the time of his birth until the time of his death, interrupted only by his stays in a foster home. The defendant urges the proof does not show that he caused the death of Christopher which is a necessary ingredient to the murder conviction.

In the instant case, the defendant Caprio so abused and injured his son as to place him in a precarious physical condition, requiring brain surgery to save the child from at least severe mental retardation. The death of the child from the stress of the surgical procedure, together with the other injuries

caused by the defendant, makes the defendant Caprio liable for the child's death (*People* v. *Kibbe,* 35 N Y 2d 407, affg. 41 A D 2d 228; *People* v. *Parody,* 248 App. Div. 269).

The defendant urges that the circumstantial evidence on the trial did not constitute proof beyond a reasonable doubt. Without discussing the evidence in detail, the evidence herein is more than sufficient to support the defendant's conviction (*People* v. *Cleague,* 22 N Y 2d 363; *People* v. *Buford,* 37 A D 2d 38).

A review of the prosecutor's summation reveals that it is neither prejudicial nor inflammatory nor mistaken as to facts, as alleged by the defendant, and offers no reason for reversal.

The defendant urges that his sentence was excessive. On his conviction he received the maximum of 25 years to life. The defendant's sentence should be reduced to a term of 15 years to life.

The judgment should be modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed to a term of 15 years to life, and, as so modified, affirmed.

HERLIHY, P. J. (concurring). The record in this case and also in the case of *People* v. *Fox* (47 A D 2d 699 [decided herewith]) established that the public agencies and/or public officials either were well aware or should have been aware of the fact that the parents or a parent were disposed to abusing children in the home. Given such apparent knowledge it is not immediately understandable how the parental relationship should have been allowed to continue to the point where in both cases the death of a child has resulted from brutality. It would appear from these records that either the existing remedies available to terminate child abuse are inadequate or the persons responsible for enforcing such remedies are not exercising appropriate diligence. In any event, it is most unfortunate that the adults involved in these cases were permitted to continue a parental relationship until a death in fact occurred.

HERLIHY, P. J., and SWEENEY, J., concur with LARKIN, J.; HERLIHY, P. J., also concurs in a separate opinion in which SWEENEY, KANE, MAIN and LARKIN, JJ., concur; KANE and MAIN, JJ., concur in part and dissent in part and vote in all respects to affirm the judgment of conviction.

Judgment modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed to a term of 15 years to life, and, as so modified, affirmed.