THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JANET ARCA, Appellant.

Fourth Department, January 24, 1980

206

## APPEARANCES OF COUNSEL

*William J. McClusky* for appellant.

*Lee Clary, District Attorney,* for respondent.

## OPINION OF THE COURT

MOULE, J.

Defendant was convicted of murder in the second degree following the child abuse death of her three-month-old infant. Defendant contends that the evidence was insufficient to support the conviction and that the admission of certain photographic evidence constituted reversible error.

■ The evidence at trial was sufficient to support the jury's verdict. The prosecution had the burden of proving that the defendant, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct creating a grave risk of death to another person causing such death (Penal Law, § 125.25, subd 2). Expert medical testimony taken at trial indicated that the child, at the time of her death, was bruised on the chest, back and lower jaw, and had puncture wounds on the lower jaw. The child also had several fractured ribs and a deformed forearm which resulted from a fracture which had not been treated. These injuries were inflicted over a one-month period. An autopsy revealed that the child suffered from a large hemorrhage over the right side of the brain and multiple smaller hemorrhages beneath the scalp. The County Medical Examiner found that the large hemorrhage caused the child's death. The nature and extent of the child's injuries are circumstantial proof that they were inflicted with

a depraved indifference to human life *(People v Lilly,* 71 AD2d 393; see *People v Caprio,* 47 AD2d 1). Defendant admitted to the arresting officers that, when the child cried, she was in the habit of snatching her up and grasping her harder than she should, occasionally striking the child's head on her crib. She also admitted that she picked up the child and shook her to try to make her stop crying, an action which the medical examiner felt could have caused the hemorrhage which resulted in death. Additionally, defendant admitted that at times she would touch the fontanel on the child's head and that the child would react in a peculiar manner. Finally, she stated to the arresting officer that she had never seen the man with whom she and the child resided strike the child.

A jury could properly conclude that the evidence presented at trial was inconsistent with mere recklessness or negligence on the part of defendant. The medical testimony relating to the cause of the child's death corroborates defendant's admissions and provides sufficient proof that the crime was committed to meet the requirements of CPL 60.50 *(People v Murray,* 40 NY2d 327). The injuries suffered by the child and the evidence linking defendant to those injuries are sufficient to establish that the child's death resulted from conduct on the part of defendant which evinced a depraved indifference to human life (see *People v Lilly, supra; People v Kibbe,* 35 NY2d 407; *People v Poplis,* 30 NY2d 85).

■ Defendant additionally asserts that the admission into evidence of photographs of the dead child was reversible error. Photographic evidence in criminal cases, however, should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant *(People v Pobliner,* 32 NY2d 356; *People v Corbett,* 68 AD2d 772). Here, the photographs of the dead child were introduced to prove the extent of the child's injuries. Since the extent of the injuries was a major element in the prosecution's proof that defendant acted with a depraved indifference to human life, the introduction of the photographs cannot be considered to have been solely motivated by a desire to inflame the jury. Nor did the manner in which the jury was allowed to view the photographs contravene any recognized procedure. The jurors were allowed to take the photographs with them for viewing during a short recess. CPL 310.20, which requires that both parties be accorded an opportunity to be heard before the jurors are allowed to take exhibits with them upon retiring to deliberate,

does not apply here since the jurors were not deliberating when they viewed the photographs. It was within the court's discretion, once the photographs were admitted into evidence, to permit the jurors to view them in this manner as an alternative to taking time during in-court proceedings for such viewing. In any event, the error, if any, is harmless since there is no significant probability that the jury would have reached a different result had the photographs not been admitted *(People v Crimmins,* 36 NY2d 230).

DOERR, J. (dissenting). I would reverse the conviction. The People's proof consisted almost entirely of circumstantial evidence against defendant. When such is the case, for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them and must exclude to a moral certainty every hypothesis of innocence *(People v Benzinger,* 36 NY2d 29). This oft-stated rule becomes especially significant when examining several elements of this case. The proof offered at trial was largely medical in nature and consisted of a showing that until about one month before her death the deceased infant was reasonably healthy and well cared for. She was hospitalized for a short period because of a problem in gaining weight. After her death it was discovered that the youngster, in the last month of her life, had suffered multiple rib fractures, a fractured radius of her right arm, multiple hemorrhages into the right lung, multiple hemorrhages beneath the skin of the scalp, various hemorrhages of the brain and a number of bruises about her body. The cause of death was attributed to massive subdural hematoma, compression of the brain, and disruption of the centers which control breathing and heart activity.

The only testimony linking defendant to any possible physical contact with the child which could be interpreted as contributing to the injuries and death were admissions made by defendant to a police officer indicating that on occasion she would pick the baby up quickly when the child was crying, losing her temper doing so, and grasp the baby much harder than she probably should, and in the process sometimes accidently striking the baby's head on the crib. She also admitted that she sometimes shook the baby. There was no independent, direct proof by any witness who saw or could testify to these actions by defendant as required by CPL 60.50. In addition, the police officer's testimony as to when defendant

might have acted as she admitted to him is without a time frame which could be considered conclusive and unequivocal.

The court committed reversible error in the treatment of certain exhibits, consisting of five color photographs of the dead infant. Early in the trial a medical witness testified extensively concerning these exhibits, explaining in detail what each photograph showed. These exhibits were then offered in evidence. Over objection of counsel the exhibits were received in evidence. The prosecutor then requested permission of the court to show the exhibits to the jury. The court, rather than granting the somewhat monitored permission of in-court viewing, declared a recess and permitted the jurors to take the objected to exhibits to the jury room with them. Putting aside the propriety of receiving these exhibits into evidence in the first instance, the procedure followed by the court constituted reversible error. CPL 310.20 (subd 1) provides: *"Upon retiring to deliberate,* the jurors may take with them: 1. Any exhibits received in evidence at the trial which the court, *after according the parties an opportunity to be heard upon the matter,* in its discretion permits them to take"* (emphasis supplied).

It has been held to be substantial error to permit exhibits to be taken into the jury room without consulting defense counsel *(People v Dockum,* 285 App Div 510). In *Dockum* the exhibits were given to the jurors during their deliberations and the court observed (p 513): "What use was made of them we do not know, but we may not assume that the presence of such exhibits with the jurors during their deliberations did not influence their verdict." The possible contamination of a jury by exhibits, which by their nature are inflammatory, early in the trial and long before deliberations began, created a serious challenge to the fairness of defendant's trial.

Finally, the proof offered by the People cannot sustain a conviction of defendant of murder in the second degree under subdivision 2 of section 125.25 of the Penal Law which provides: "Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person". There was no witness who saw defendant strike, scratch or injure the baby in any manner or threaten to do so. The only proof on the issue of injuries inflicted on the infant has to be culled from the interrogation of defendant by the police officers and on the present record

this fails to meet the statutory requirement to sustain the conviction (CPL 60.50; 70.10, subd 1; 70.20). Indeed, a serious question arises whether even these admissions made by defendant can be expanded to connect defendant with the death of the infant. In *People v Poplis* (30 NY2d 85, 87), defendant's conviction for murder under Penal Law (§ 125.25, subd 2) was affirmed in the beating death of a 3½-year-old child, the court observing that "[t]he proof abundantly establishes that the death of Roxanne Felumero, the three-and-a-half-year-old child of defendant's wife, was caused by repeated physical beatings by defendant". It was pointed out that such beatings by the defendant were established by defendant's wife as well as several witnesses. "It is most difficult in many cases to determine 'the difference between killing someone with reckless disregard of the consequences and killing someone with reckless disregard *and* under circumstances evincing a depraved indifference to human life' (Gegan, [A Case of Depraved Mind Murder, 49 St. John's L Rev 417] p 440). Accordingly, a trial court is required to examine the evidence with meticulous care before permitting a charge of manslaughter to be elevated to the crime of murder. On appeal, the degree of care cannot be less. [Footnote omitted.]" *(People v France,* 57 AD2d 432, 435.)

To meet the "depraved indifference to human life" standard imposed by subdivision 2 of section 125.25 of the Penal Law, there must be a showing of brutality, callousness and an inhumanity which transcends recklessness, criminal negligence, cruelty or tragedy *(People v Poplis, supra; People v Stevens,* 51 AD2d 659). A special kind of wantonness is required which is not present in this case. A new trial should be had on the lesser charges of manslaughter in the second degree and criminally negligent homicide.

HANCOCK, JR., J. P., SCHNEPP and CALLAHAN, JJ., concur with MOULE, J.; DOERR, J., dissents and votes to reverse and grant a new trial in an opinion.

Judgment affirmed.