THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GLORIA McNEELEY, Appellant.

Fourth Department, November 13, 1980

## APPEARANCES OF COUNSEL

*Richard V. Slater (J. Kevin Laumer* of counsel), for appellant.

*John T. Ward, Jr., District Attorney (Stephen Foyer* of counsel), for respondent.

## OPINION OF THE COURT

MOULE, J.

Defendant was convicted of murder in the second degree for causing the death of her two-year-old daughter. On April 19, 1976, at approximately 2:15 P.M., defendant, accompanied by a friend, brought her daughter to the emergency room of the W. C. A. Hospital in Jamestown. The child had severe burns on the lower half of her body, was bruised on her head, chin, upper arms, shoulders and back, had welts about her head and was near death. When the child failed to respond to resuscitative efforts, she was taken to Buffalo Childrens Hospital where she died.

After being notified of the death by the Buffalo Homicide Squad, Detective Gary Johnson of the Jamestown Police Department obtained from the Department of Social Services its file on the McNeelys. As he was leaving the Department of Social Services, he saw defendant, at about 11:45 A.M., standing near the elevator and asked her to come to the police station located in the same building, to which defendant agreed. Before talking to her further, another detective, George Thompson, gave her *Miranda* warnings and, at approximately 12:50 P.M., she signed a waiver of rights. She gave a written statement that she had put her daughter on a cot to nap, had herself fallen asleep and upon awakening had found the baby scalded in the bathtub. At about 2:25 P.M., defendant signed a consent to search form and then went to lunch with a police clerk. Detectives Johnson and Thompson then went to her apartment to make tests of the temperature of the water which they ran into her tub and to take photographs. After returning at about 3:45 P.M., the detectives received a phone call from the medical examiner who had performed an autopsy. The doctor stated that, in her opinion, the distribution of burns on the child's body indicated that the baby had been held in hot water and the death was a homicide.

Defendant, who was sitting in a room adjoining the one in which the detectives were talking to the doctor, heard por-

tions of the conversation. She entered the room where the detectives were, stating, "I didn't kill her, I don't care what the doctor says." After being confronted with the autopsy findings, defendant recanted her first statement and gave another one in writing in which she admitted holding the child down in water in the tub. She read and signed the second statement at approximately 4:05 P.M. and was arrested.

Defendant contends that her statements, as well as the results of the search of her apartment to which she gave her consent, should have been suppressed at trial as the products of an illegal detention.

■ Any involuntary detention on less than probable cause violates the Fourth Amendment (*Dunaway v New York*, 442 US 200; *People v Misuis*, 47 NY2d 979) and an illegal detention serves to invalidate a subsequent confession unless an intervening event of significance dissipates the taint of the original illegality (*Dunaway v New York, supra; Brown v Illinois*, 422 US 590; *Wong Sun v United States*, 371 US 471; *People v Johnson*, 75 AD2d 715). Even though a defendant may voluntarily accompany the police, the situation may become custodial in nature. In deciding whether a defendant is in custody, the test is not what the defendant or the police thought but, rather, what a reasonable person, innocent of any crime in the defendant's position, would have thought (*People v Yukl*, 25 NY2d 585, 589; *People v Byers*, 71 AD2d 77, 80).

On this record there is no indication that defendant was forced to accompany Detective Johnson or to remain at the station against her will. At the *Huntley* hearing the detectives did testify that, after the defendant's first statement, they wanted her to remain until they had completed the search of her apartment and the autopsy findings came in. They requested that she remain and asked a police clerk to accompany her to a restaurant outside of the police station for coffee. At that time there was no probable cause upon which to arrest the defendant. Defendant neither presented any evidence at the *Huntley* hearing, nor testified at trial that she was forced to go to the station or was forced to remain. There is nothing on the record to contradict the testimony of the detectives that defendant was free to go or to suggest that a reasonable, innocent person would have thought he was in custody given these facts. Where there are different inferences that can be drawn from the facts, the choice is for the trier of

the facts and should be honored unless unsupported as a matter of law *(People v Maerling,* 46 NY2d 289, 301; *People v Yukl, supra,* p 588; *People v Anderson,* 42 NY2d 35, 38-39; *People v Liccione,* 63 AD2d 305, 313). We conclude that the evidence is sufficient to support the trial court's finding that defendant voluntarily went to and remained at the police station. Consequently, the defendant's statements and consent to search are not invalidated by an illegal detention.

Defendant also contends that the bathtub should have been suppressed because it was seized without a warrant on April 28, six days after the consent to search was executed.

■ Although the police had the landlord's consent to take the bathtub, it is well established that a landlord does not possess the authority to consent to the search of a tenant's apartment *(Chapman v United States,* 365 US 610; *People v Stadtmore,* 52 AD2d 853, 854). To use consent to justify the lawfulness of the search and seizure, the prosecution has the burden of proving by clear and convincing evidence that the consent was unequivocally, voluntarily and freely given by defendant *(Schneckloth v Bustamonte,* 412 US 218; *Bumper v North Carolina,* 391 US 543; *People v Berrios,* 28 NY2d 361; *People v Whitehurst,* 25 NY2d 389; *People v Tinneny,* 99 Misc 2d 962, 965). Moreover, the court is required to indulge every reasonable presumption against the waiver of constitutional rights guaranteed by the Fourth Amendment *(Green v United States,* 355 US 184; *Johnson v Zerbst,* 304 US 458).

■ Considering the changed circumstances between the time of the consent and original search and the time at which the bathtub was taken, the ample opportunity the police had during the six days to obtain a warrant, and the form signed by the defendant explicitly stating that the search was to take place within two hours of signing, we find the taking of the bathtub may have been illegal and, if so, should have been suppressed at trial.

However, the bathtub was only exhibited twice throughout the entire trial. It was shown during the testimony of the medical examiner to illustrate the comparative height of the child and tub and apparently to refute the notion that the child climbed into the tub herself. The bathtub was also in the courtroom during the prosecution's summation. The admission of the illegally seized evidence may have been constitutional error but it was harmless since there is overwhelming proof of the defendant's guilt. The Federal harmless error test that

there was no reasonable possibility that the error might have contributed to the defendant's conviction was met *(Chapman v California,* 386 US 18; *Fahy v Connecticut,* 375 US 85; *People v Crimmins,* 36 NY2d 230).

■ Defendant contends the medical examiner's testimony that the child was held in the water was improper opinion evidence by an expert witness because such conclusions are within the range of ordinary thinking and because it was mere speculation. At trial, the medical examiner stated that the water lines on the victim's body, clearly delineating burned and nonburned flesh in straight, sharp lines, indicated, in her opinion, that the child was held in a stationary position in the water. On cross-examination, the medical examiner conceded that it was possible for the burns to have been sustained even if the child was not held. In addition, a defense expert testified that, in his opinion, the burns were sustained after the child was rendered unconscious by a seizure and that it was inconceivable to him, upon examining the distribution of the burns, that the child was held in a stationary position. Given the unusual nature of the injuries and the conflicting positions taken by the expert witnesses, it cannot be said that the statement by the medical examiner was unnecessary and within the common knowledge of the jurors. It is conceivable that the average juror could not determine how a child could sustain such burns or appreciate the significance of the pattern of burns on the child's body. Determining whether proof on a particular subject is necessary is within the discretion of the trial court *(People v Patno,* 13 AD2d 870). Nor can it be said that the medical examiner's testimony was speculative. The doctor's statements clearly were not in terms of possibilities, conjecture nor speculation (see *Matter of Riehl v Town of Amherst,* 308 NY 212, 216; *People v Harding,* 59 AD2d 897, 898).

Defendant's heavy reliance on *People v Creasy* (236 NY 205) is misplaced. Here, the doctor's opinion that burns on a child were caused in a particular manner is not a determination of the ultimate fact, but indicates that a young child found with a certain type of injury has not suffered such an injury by accidental means. This testimony of the medical examiner is similar to that allowed by the Court of Appeals in other child abuse cases *(People v Eisenman,* 39 NY2d 810, 811; *People v Henson,* 33 NY2d 63, 73-74). The decision to admit such expert

testimony is within the discretion of the trial court *(People v Henson, supra,* p 74).

■ Defendant's contention that the receipt in evidence of color slides of the deceased and their use by the medical examiner in explaining her testimony was error, is also without merit. Photographic evidence in criminal cases should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant *(People v Pobliner,* 32 NY2d 356, 369-370; *People v Corbett,* 68 AD2d 772, 780). The slides were used to illustrate the nature and extent of the victim's injuries, especially with regard to the unique distribution of the burns. Since the nature and extent of the injuries was a major element in the prosecution's proof that defendant acted with a depraved indifference to human life, the introduction of the slides cannot reasonably be said to have been motivated solely by a desire to inflame the jury *(People v Arca,* 72 AD2d 205, 207).

■ Defendant also contends that she was prejudiced by the introduction of character evidence and testimony designed to show her propensity to commit a crime. Evidence that tends to negate the defense of accident or mistake is a recognized exception to the general rule that excludes evidence of collateral conduct *(People v Dales,* 309 NY 97, 101; *People v Molineux,* 168 NY 264, 293). This exception is especially applicable in cases where the crime charged has occurred in the privacy of the home and the facts are not easily ascertainable *(People v Henson,* 33 NY2d 63, 72, *supra).*

The medical examiner found the cause of death to be shock from second degree burns covering 40% of the child's body, contributed to by bruises, other injuries, and the abnormal condition of the child's liver caused by alcohol abuse. Consequently, evidence that defendant blew marihuana smoke into the child's nose and allowed others to do it, filled the child's bottles with beer and wine on a regular basis, failed to treat the child's bleeding diaper rash and physically abused the child by beating her so as to leave marks and bruises, was admissible to demonstrate that the debilitated condition of the child, which contributed to her death, was not accidental. Although neither objected to at trial nor raised on appeal, there was also testimony by a baby-sitter who observed such extensive bruises and swelling on the child that she filed a child abuse complaint with the police.

Similarly, defendant's use of speed was relevant on the issue

of her intent on the day the child was burned *(People v Molineux,* 168 NY 264, 293, *supra).* The prosecution introduced testimony that defendant had a tendency to be moody, touchy and irritable when recovering from the effects of speed. There was testimony that defendant had taken speed a few days before this incident, permitting the jury to draw the inference that defendant's actions were the result of these tendencies.

Other testimony concerning defendant's drinking habits, paying her bar tab with welfare money, extensive use of baby-sitters and her failure to pay them, her poor housekeeping abilities, and her use of acid and other drugs, was not specifically objected to at trial and preserved for appeal. In view of the overwhelming proof of defendant's guilt, we are not moved to reverse in the interests of justice *(People v Cheeks,* 66 AD2d 1021, 1022; *People v Jones,* 32 AD2d 1069, 1070, affd 27 NY2d 501).

Defendant's final contention was that the evidence at trial was insufficient to establish murder in the second degree. The prosecution had the burden of proving that the defendant, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct creating a grave risk of death to another person causing such death *(People v Poplis,* 30 NY2d 85, 88; Penal Law, § 125.25, subd 2). This crime requires "extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness" (Hechtman, Practice Commentaries, McKinney's Cons Law of NY, Book 39, Penal Law, § 125.25, p 399). In determining the sufficiency of the evidence, it must be examined with meticulous care *(People v France,* 57 AD2d 432, 435). However, the evidence must be viewed in the light most favorable to the prosecution and it is assumed that the jury believed the prosecution's witnesses because the prosecution prevailed at trial *(People v Kennedy,* 47 NY2d 196, 203).

■ Although circumstantial in part, the proof of depraved indifference here was very strong. Child abuse ordinarily goes on behind closed doors, avoiding the light of day. "Consequently, proof in a battered baby's death will ordinarily be circumstantial in nature *(People v Caprio,* 47 AD2d 1), which is sometimes stronger than direct evidence *(People v Benzinger,* 36 NY2d 29, 32)." *(People v Lilly,* 71 AD2d 393, 395.) A jury could properly conclude that the evidence presented at trial was inconsistent with mere recklessness or negligence by

the defendant. The injuries suffered by the child and the evidence linking defendant to those injuries are sufficient to establish that the child's death resulted from conduct on the part of defendant which was depravely indifferent to human life *(People v Kibbe,* 35 NY2d 407; *People v Poplis,* 30 NY2d 85, *supra; People v Arca,* 72 AD2d 205, *supra; People v Lilly,* 71 AD2d 393, *supra).*

Accordingly, the conviction should be affirmed.

CARDAMONE, J. P., HANCOCK, JR., SCHNEPP and CALLAHAN, JJ., concur.

Judgment unanimously affirmed.