■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD G. METTLER, Appellant.—Harvey, J. Appeal from a judgment of the County Court of Madison County (O'Brien, III, J.), rendered September 1, 1987, convicting defendant following a nonjury trial of the crime of murder in the second degree.

On November 14, 1986 at 4:45 P.M., Robin Holmes left for work leaving defendant, her live-in boyfriend, to care for her two children at their apartment in the Village of Earlville, Madison County. According to Holmes, her two-year-old son Darrick had misbehaved and angered defendant earlier in the day but she told defendant that she would take care of the child's discipline when she returned home from work. At 9:30 P.M. Holmes received a telephone call from defendant relating that Darrick had fallen and that Holmes should come home immediately. Before Holmes could arrive home, however, two neighbors went over to the apartment and observed Darrick to be injured and unconscious. They then transported the boy to the hospital leaving defendant to care for the other child. When Darrick was examined at the hospital it was discovered that the child had extensive bruises, most of them recent, all over his body, especially on the scalp and neck. The child died on November 16, 1986 due to multiple blunt trauma produced by several blows to the child's head.

Defendant was subsequently indicted for the crime of murder in the second degree under circumstances evincing a

depraved indifference to human life. Defendant pleaded not guilty but waived his right to a jury trial in open court. At trial, defendant testified that the child's injuries were basically due to the boy's own clumsiness in slipping and falling on his head following a spanking. Thereafter, defendant was found guilty of the charged crime and was sentenced to an indeterminate prison term of 23 years to life. This appeal followed.

Initially, defendant asserts that the evidence produced at trial was insufficient to support his conviction of murder in the second degree. According to defendant, although he may have exercised poor judgment in disciplining the child, his conduct was not so extremely cruel, prolonged or vicious so as to evince a depraved indifference to human life. Defendant further asserts that the Medical Examiner's testimony at trial failed to show the necessary causal connection between defendant's action and the child's death.

We disagree. In order to be convicted of this crime, the evidence must show that defendant "[u]nder circumstances evincing a depraved indifference to human life * * * recklessly engage[d] in conduct which create[d] a grave risk of death to another person" (Penal Law § 125.25 [2]). Along with demonstrating recklessness (Penal Law § 15.05 [3]), the People were also required to establish that defendant's acts were "imminently dangerous and presented a very high risk of death to others and that [they were] committed under circumstances which evidenced a wanton indifference to human life or a depravity of mind" *(People v Register,* 60 NY2d 270, 274, *cert denied* 466 US 953). While the conduct leading to the crime must be so blameworthy as to warrant the same criminal liability that is imposed for intentional murder, the crime is differentiated from intentional murder in that it results from an indifference to or disregard of the risks attending the defendant's conduct rather than from a specific, conscious intent to cause death *(supra,* at 274-275; *see, People v Fenner,* 61 NY2d 971, 973).

In the case at bar, there was convincing evidence that the child was severely beaten. Defendant admitted pulling the child's hair, banging his head against the wall repeatedly and pushing the child to the floor, causing the child to strike his head. Defendant also described spanking or pushing the child so as to propel him against a kitchen cabinet, again causing him to strike his head. The child sustained severe trauma to the head as well as injuries to his legs, chest, buttocks and face. Under these circumstances, the brutal nature and extent

of the child's injuries constituted evidence that they were inflicted with a depraved indifference to human life *(see, People v Poplis,* 30 NY2d 85; *People v Arca,* 72 AD2d 205). As for the Medical Examiner's conclusions as to causal connection between the injuries inflicted by defendant and the child's death, such conclusions cannot be merely speculative but absolute certainty is not required, nor is exclusion of every other possibility *(Matter of Anthony M.,* 63 NY2d 270, 280-281). The evidence adequately established that defendant's actions were an actual contributing cause of the child's death *(see, supra,* at 280).

Next, defendant contends that he did not knowingly and intelligently waive his right to a jury trial based on defendant's limited intelligence and his alleged confusion displayed at the waiver examination conducted by County Court. While this issue has not been preserved for appellate review *(see,* CPL 470.05 [2]; *People v Davidson,* 123 AD2d 782, 783, *lv denied* 69 NY2d 826), we find, in any event, that defendant's waiver was entirely voluntary. The record reveals that defendant signed the written waiver form in open court only after consulting with counsel and being informed by County Court of the full nature and consequences of his waiver *(see, People v Aponte,* 144 AD2d 679; *People v Harris,* 133 AD2d 649, 650, *lv denied* 70 NY2d 932). Defendant specifically stated that he knew he had a right to a jury and answered the court's questions thoroughly and appropriately.

Finally, we reject defendant's claim that he was denied effective assistance of counsel. Our review of the record reveals that defense counsel provided meaningful legal representation in the totality of the circumstances *(see, People v Baldi,* 54 NY2d 137, 147; *People v Carolina,* 112 AD2d 244, 246, *lv denied* 66 NY2d 917). While defendant contends that defense counsel should have requested a competency hearing for defendant pursuant to CPL article 730, there is no evidence that defendant lacked the capability of understanding the proceedings against him or assisting in his own defense *(see,* CPL 730.10 [1]). As for defense counsel's determinations as to which witnesses should have been called or not called, true ineffectiveness should not be confused with losing tactics at trial and we decline to accord undue significance to hindsight analysis *(see, People v Baldi, supra,* at 146).

Judgment affirmed. Casey, J. P., Mikoll, Yesawich, Jr., Mercure and Harvey, JJ., concur.