■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID POPE, Appellant. [660 NYS2d 466] —Mercure, J. Appeal

from a judgment of the County Court of Washington County (Moynihan, Jr., J.), rendered May 30, 1995, upon a verdict convicting defendant of the crime of murder in the second degree.

A November 1994 indictment charged defendant with murder in the second degree based upon allegations that more than 22 years earlier (on Sept. 11, 1972) he had caused the death of his girlfriend's two-year-old son (hereinafter the child) by abusing and battering him. The record reveals that on the date of the child's death his mother summoned an ambulance to her residence and when the ambulance arrived defendant was holding him. The child stopped breathing on the way to the hospital and was pronounced dead on arrival. A police officer took several photographs of the child and described seeing many bruises and scabs on his body.

The 1972 postmortem examination report of the child's "unexplained sudden death" indicated that the child was emaciated, had recent and old abrasions, a recent healing puncture wound of the scalp, a small subgaleal hematoma, cerebral congestion, possible early acute meningitis, a large acute perforation of the anterior wall of the stomach, acute chemical peritonitis, a recent fracture of a right rib, subpelvic hemorrhages, a pyramidal hemorrhage of the left kidney and a small recent hemorrhage of a segment of the ileum and descending colon. The death certificate filed at that time, which was not signed, lists the immediate cause of death as chemical peritonitis as a consequence of the stomach perforation. The portion of the form intended to indicate whether death was by accident, suicide, or homicide was left blank. On August 24, 1994 defendant, while incarcerated and represented by counsel on an unrelated charge, was interviewed by a State Police Investigator at the Washington County Jail. After being advised of his *Miranda* rights and signing a waiver, defendant gave oral and written statements concerning the events surrounding the child's death.

In September 1994, forensic pathologist Michael Baden supervised the disinterment of the child's body and performed an autopsy, after which he concluded that the immediate cause of death was multiple old and recent contusions of the head, chest and abdomen, traumatic laceration of the stomach with acute diffuse peritonitis, a healing rib fracture and malnutrition, which occurred as the result of "battered child syndrome". In addition to his autopsy of the exhumed body, Baden based his conclusions upon his review of X rays that had been taken in 1972, the initial autopsy report and microscopic slides pre-

pared at the time of the original autopsy. Thereafter, Baden signed a death correction report indicating that the death was a homicide. After a jury trial, wherein 23 witnesses testified on behalf of the prosecution, including Baden and many of defendant's family members, neighbors and acquaintances who were familiar with events leading up to the child's death, defendant was found guilty and sentenced to a prison term of 25 years to life. Defendant appeals.

We affirm. Of the many points advanced in the main brief and in defendant's *pro se* supplemental brief, only a few merit discussion. Initially, viewing the evidence in the light most favorable to the prosecution (*see, People v Contes*, 60 NY2d 620, 621; *People v Johnson*, 213 AD2d 791, 793, *lv denied* 85 NY2d 975), we conclude that the evidence adduced at trial was legally sufficient to establish defendant's guilt beyond a reasonable doubt. Expert medical testimony establishing that the victim suffered from battered child syndrome, together with additional evidence that the injuries occurred while the child was in defendant's custody, was sufficient to permit the jury's inference that the child's injuries were not accidental and that they were caused by defendant (*see, People v Henson*, 33 NY2d 63, 74; *People v Caprio*, 47 AD2d 1), especially in light of the testimony given by the child's mother. Baden testified as to his opinion that the child suffered from battered child syndrome, which occurs when a child suffers multiple injuries over a period of time at the hand of another. Baden stated that the final blow that caused the child's death was a very localized blow to the left side of the front of the lower chest and abdomen which could not have occurred from a general fall; he suggested that the possible cause of the perforation was a shoe or a fist. Further, John Glennon, the physician who saw the child when he was taken to the hospital in 1972, testified that the child had bruises in various stages over his head, arms and body and expressed the opinion that the child died as a result of battered child syndrome. Additional testimony showed that defendant had hit the child with boards and an antenna wire with sufficient force to cause welts. Significantly, the child's mother testified that the day before the child died, defendant spent considerable time with him and beat him by stomping him to the floor and punching him. Defendant's contention that the child died as a result of a fall or by swallowing a chicken bone is not supported by the record. Rather, the evidence amply supports a conclusion that the child died as a result of defendant's brutality and not an accident (*see, People v Henson, supra*). Moreover, upon the exercise of our factual review power, we are satisfied that the jury's verdict is not against the weight of the evidence (*see,* CPL 470.15 [5]).

Next, we reject defendant's contention that County Court erred in allowing testimony of defendant's prior bad acts. In our view, County Court properly weighed the probative value of such evidence and its prejudicial effect, following a pretrial *Ventimiglia* hearing. "Proof of uncharged criminal acts is admissible to show the absence of mistake or accident as far as the charged acts are concerned * * *. Such evidence is especially warranted in cases * * * where the crime charged has occurred in the privacy of the home and the facts are not easily unraveled" (*People v Caprio, supra*, at 3 [citation omitted]; *see, People v Henson, supra*, at 72). Thus, "[i]n cases involving charges of child abuse, evidence of a defendant's prior conduct is relevant to establish that the injuries were not accidental or were caused by another individual" (*People v Engler*, 150 AD2d 827, 829, *lv denied* 75 NY2d 770 [citation omitted]). Clearly, the testimony elicited regarding defendant's prior physical and mental abuse of the child tended to negate defendant's contention that the child succumbed due to a fall or as the result of swallowing a chicken bone.

There is merit, however, to the contention that County Court erred in denying defendant's motion to suppress the oral and written statements he gave to the State Police Investigator at the Washington County Jail on August 24, 1994. The uncontroverted evidence adduced at the *Huntley* hearing established that at the time of the questioning, defendant was in custody on unrelated rape and incest charges and that counsel had been assigned to represent him in connection with those charges. Under the circumstances, County Court's reliance upon *People v Bing* (76 NY2d 331) was mistaken. As made clear in *People v Steward* (88 NY2d 496, 502), decided during the pendency of this appeal, although *People v Bing* (*supra*) "unequivocally eliminate[d] any right to counsel derived solely from a defendant's representation in a prior unrelated proceeding" (*People v Steward, supra*, at 500), *People v Rogers* (48 NY2d 167) "establishes and still stands for the important protection and principle that once a defendant in custody on a particular matter is represented by or requests counsel, custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or obtained, must cease" (*People v Steward, supra*, at 501). Stated another way, "the *Rogers* right to counsel bars questioning on unrelated matters * * * when a defendant is in custody on the initial charge upon which the right to counsel has attached" (*People v Steward, supra*, at 502; *see, People v Rogers, supra*, at 173), the precise case here.

Nonetheless, under the circumstances of this case, we

conclude that County Court's denial of defendant's motion to suppress his written statement represented harmless error (*see, People v Crimmins,* 36 NY2d 230). We base that conclusion upon the essentially exculpatory and nonincriminating nature of the statements that are at issue, defendant's subsequent voluntary counseled testimony before the Grand Jury and the overwhelming evidence of his guilt (*see, People v Richard,* 229 AD2d 787, 788, *lv denied* 89 NY2d 928; *People v Bostic,* 208 AD2d 554, *lv denied* 84 NY2d 1029). We note that the counseled testimony defendant gave before the Grand Jury encompassed the material at issue here and was in fact far more inculpatory. That Grand Jury testimony, which was received in evidence at the trial, and the testimony of a number of other witnesses render the subject evidence cumulative at most. Defendant's additional contentions have been considered and found to be either unpreserved for appellate review or totally lacking in merit.

Cardona, P. J., White and Carpinello, JJ., concur. Ordered that the judgment is affirmed.