■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEONARD C. DAVIS, Appellant. [664 NYS2d 130] —Yesawich Jr., J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered April 19, 1995, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

Accused of having fatally stabbed his cousin, Melvin Merritt, in 1985, defendant now stands convicted, after his third trial (*see,* 142 AD2d 791; 201 AD2d 827, *lv denied* 83 NY2d 910), of manslaughter in the second degree. Sentenced to an indeterminate term of incarceration of 5 to 15 years, defendant appeals.

We affirm. A number of individuals who witnessed the altercation between defendant and Merritt testified that they saw defendant chasing Merritt, and ultimately stabbing or punching him with a knife or "shiny object", while Merritt was lying on his back, kicking and struggling. Defendant's account of the incident, namely, that it was Merritt, not he, who produced the knife, merely presented a credibility question that the jury—not unreasonably, in our view, given the remainder of the evidence—resolved against him (*see, People v Benson,* 233 AD2d 749, 750, *lv denied* 89 NY2d 940).

To the extent that it appears that medical personnel who treated Merritt after the stabbing may have exacerbated the condition that ultimately caused his death (a seepage of blood from the heart into the pericardium) by failing to discover and immediately treat the stab wound that pierced his heart and by performing cardiopulmonary resuscitation, that does not negate the critical fact that it was the stab wound itself that caused that life-threatening condition to develop in the first instance. Even assuming that the medical treatment Merritt received may have contributed to his death, there was convincing, and indeed uncontradicted, proof that the stabbing was an actual and very direct cause thereof. In these circumstances, " 'the causal co-operation of erroneous surgical or medical treatment does not relieve the assailant from liability for homicide' " (*People v Stewart,* 40 NY2d 692, 697, quoting *People v Kane,* 213 NY 260, 270; *see, People v Griffin,* 80 NY2d 723, 727, *cert denied* 510 US 821).

In short, the proof tendered was legally sufficient to establish each of the elements of the crime of manslaughter in the second degree (*see, People v Durand,* 188 AD2d 747, *lv denied* 81 NY2d 884; *People v Fernandez,* 135 AD2d 867, 868, *lv denied* 71 NY2d 895), and to disprove defendant's claim that his actions were justified. Moreover, exercising our factual review power (*see, People v Bleakley,* 69 NY2d 490, 495), we cannot say that the verdict reflects a failure to "give the evidence the weight it should be accorded" (*id.,* at 495).

Defendant's remaining contentions merit little comment. The hearsay testimony of two witnesses who recounted Merritt's statement, made immediately after he was injured, that he did not know that defendant had a knife, was properly

admitted as an excited utterance (*see, People v Brooks*, 71 NY2d 877, 878; *People v Davis*, 203 AD2d 300, 300-301, *lv denied* 83 NY2d 966).

County Court's *Sandoval* ruling, allowing the prosecutor to elicit, during cross-examination, that defendant had been convicted of a B and an A-2 felony (without indicating the nature of those crimes)—a so-called *Sandoval* compromise—was not improvident (*see, People v Ferrara*, 105 AD2d 497). Nor does the fact that those crimes were committed after defendant's first trial for the instant offense bar their use for impeachment purposes (*see, People v Pavao*, 59 NY2d 282, 292, n 3).

Cardona, P. J., Mikoll, Mercure and Casey, JJ., concur. Ordered that the judgment is affirmed.