■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN E. DEMAND, Appellant. [702 NYS2d 441] —Spain, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered February 20, 1997, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree.

Following a jury trial, defendant was convicted of depraved indifference murder (Penal Law § 125.25 [2]) and criminal possession of a weapon in the second degree (Penal Law § 265.03). County Court sentenced defendant to concurrent terms of imprisonment, the longest of which is 25 years to life. The convictions stem from a street fight in the City of Schenectady, Schenectady County, on April 15, 1996 in which defendant was involved. During the altercation an observing bystander, Howard Wilson, was struck and killed by a stray bullet.

Prior to and at the trial, the various participants in and eyewitnesses to the fight gave conflicting accounts of what they observed and what transpired, including whether defendant possessed and displayed a gun. The trial testimony established that the incident was triggered when one girl (Tammy Smith), in the company of defendant's then-girlfriend (Sherita Sayres) and a third girl (Tysheka Martin), approached the car of another girl (Jessica Drumgold) and hit or kicked the window. Drumgold's then-boyfriend, Jay Young, observed this from his nearby apartment and went outside along with several other people, including his cousin Shawn Young, and a fight broke out in which, *inter alia*, Jay Young hit Sayres. Thereafter, a fight ensued between the Youngs and defendant during which, the prosecution maintained, defendant broke loose, pulled out a gun, the Youngs fled and defendant fired in their direction, fatally hitting the victim who was watching the fight. The Youngs and Drumgold left the scene in her Ford Tempo automobile. The gun was apparently never recovered. On defendant's appeal, we affirm.

Defendant's first two arguments on appeal focus on the admissibility of an oral statement given to police by a bystander, Yosef Mohamed, and whether his oral and written statements were timely disclosed to defendant. On the first point, Mohamed approached the second Schenectady police officer to arrive at the scene and told him that the shooter had left in a Ford Tempo headed down the street on which the shooting occurred, toward downtown. Upon our review, we find

no error in County Court's exclusion of this hearsay statement from evidence at trial, notwithstanding defendant's contention that it qualified for admission as a statement of the witness's present sense impression.

This hearsay exception is available when a statement "describes or explains an event or condition and was 'made while the declarant was perceiving the event or condition or immediately thereafter'" (*People v Vasquez*, 88 NY2d 561, 575, quoting *People v Brown*, 80 NY2d 729, 732; *see, People v Buie*, 86 NY2d 501). While "the description and the event need not be precisely simultaneous", the description must be made "'substantially contemporaneously'" with the observation and will not qualify where it is made "after the event being described has concluded" (*People v Vasquez, supra*, at 575; *see, People v Brown, supra*, at 734). County Court properly denied defendant's request to introduce this oral hearsay statement under this exception because the testimony established that it was not made while the witness-declarant was observing the event or immediately thereafter but, rather, was made at the very least seven minutes after it was over. Thus, the statement was not made "substantially contemporaneously" with the observation but, rather, was made after time for reflection and with the opportunity for a calculated misstatement and, as such, was inadmissible hearsay (*see, People v Vasquez, supra*, at 574-575; *see also, People v Dalton*, 88 NY2d 561; *People v Brown, supra*, at 733; *cf., People v Buie, supra*, at 508).

On the second point, defendant claims that he is entitled to a new trial based upon the People's failure to timely disclose Mohamed's oral statement and his written statement that after he heard gunshots, one of the people he observed fleeing the scene of the fight in the Ford Tempo had a gun. While these statements undoubtedly qualify as exculpatory material—in that they support defendant's theory that someone other than him, namely the Youngs, possessed a gun—and the prosecution had a duty to disclose them, the timing of their disclosure did not deprive defendant of a fair trial (*see, People v Cortijo*, 70 NY2d 868, 869-870; *People v Tessitore*, 178 AD2d 763, 764, *lv denied* 79 NY2d 1008; *see also, Brady v Maryland*, 373 US 83).

Although the People did not provide the written statement to the defense until August 1996, this was nonetheless nearly five months prior to trial. The People supplied the two police officers' accounts of the witness's oral statement the night before opening statements. The defense called Mohamed as a witness at trial, extensively questioning him regarding his

observations immediately after the shooting. When the witness essentially, in part, recanted—by testifying that he did not ever see a gun—defense counsel impeached him with his written statement in which he had stated that he had observed one of the fleeing individuals attempt to hand the gun to another person while running from the scene to the car. Since defendant was given a meaningful opportunity—and did so at length—to use this witness's exculpatory written statement at trial to impeach this witness (*see*, CPL 60.35), we conclude that defendant's constitutional right to a fair trial was not violated by the delay in the disclosure of this written statement (*see*, *People v Cortijo*, *supra*, at 870; *People v Brown*, 67 NY2d 555, 559, *cert denied* 479 US 1093; *People v Tessitore*, *supra*, at 763-764; *see also*, *People v Wong*, 256 AD2d 724, *lv denied* 93 NY2d 903; *People v Vecchio*, 240 AD2d 854; *People v Duffy*, 206 AD2d 679, 680, *lv denied* 84 NY2d 907; *cf.*, *People v Wright*, 86 NY2d 591, 596-598; *People v Vilardi*, 76 NY2d 67, 70-71, 78).

Regarding the People's belated disclosure—on the eve of trial—of Mohamed's at-the-scene oral statement, we agree with County Court's ruling that there is no "reasonable possibility" that the late disclosure contributed to the verdict or in any material manner harmed defendant's case (*see*, *People v Vilardi*, *supra*, at 77-78 [complete failure to disclose standard]; *see also*, *People v Scott*, 88 NY2d 888, 890; *People v Longtin*, 245 AD2d 807, 810, *affd* 92 NY2d 640, *cert denied* 526 US 1114). As the court noted, the relevant substance of the oral statement was contained in the written statement with which the witness-declarant was fully impeached by defense counsel at trial. Indeed, defendant has not convincingly demonstrated how earlier disclosure of the oral statement might have affected the theory of his defense—that he was not the shooter and did not possess a gun—or defense counsel's pursuit of other corroborative evidence or the witness's willingness to testify at trial on defendant's behalf.

Next, we are not persuaded by defendant's contention that the verdict was against the weight of the evidence. Defendant essentially claims that some of the witnesses who testified that he had a gun or was the shooter had a motivation to lie, and that the evidence otherwise failed to directly link him to the possession of a gun or to the victim's death. Of the eight eyewitnesses called by the People at trial, at least three—one participant and two bystanders—directly testified that during the fight between defendant and the Youngs they observed defendant pull a gun from his clothing and fire it in the direction of the Youngs and the victim, who were running away upon the

sight of the gun. All eight testified to observing defendant—or someone matching defendant's physical description or wearing clothing consistent with those worn by defendant—break away from the fight and pull out a gun and waive it in the air, although many immediately fled at the sight of the gun and only heard the shots coming from defendant's direction. Notably, several of the witnesses knew defendant prior to this incident.

On defendant's behalf, his then-girlfriend and one other witness testified that defendant did not have a gun, but these two witnesses and one other witness testified that neither of the Youngs shot the victim. Also, as previously discussed, Mohamed testified at trial that he did not see a gun in the possession of the men—presumably the Youngs—he observed fleeing the scene after he heard the gunshots, having recanted his prior written statement indicating that he observed one of them with a gun.

Notably, questioning and cross-examination of all of the foregoing witnesses fully explored both the accuracy and extent of their observations and their credibility, including any motivation and opportunity to lie. For example, the jury was well aware, *inter alia*, that the Youngs were cousins; that Drumgold was Jay Young's then-girlfriend and Sayres was defendant's then-girlfriend; that witness Felicia Macon and Drumgold were cousins; and that prior to trial witness Robert Evans and Mohamed had given somewhat different accounts of their observations. Upon our independent review of the conflicting evidence adduced at trial, and according great deference to the jury's opportunity to view the witnesses, hear their testimony and observe their demeanor to assist in its credibility determinations, we conclude that the jury did not fail to give the evidence the weight it should be accorded (*see, People v Bleakley*, 69 NY2d 490, 495; *People v White*, 261 AD2d 653, 656, *lv denied* 93 NY2d 1029).

Finally, despite defendant's young age of 18, lack of a violent criminal history and unstable and troubled upbringing chronicled in the presentence report, we cannot conclude that County Court abused its discretion in sentencing defendant to the maximum sentence of 25 years to life for this depraved indifference murder (*see, People v Dolphy*, 257 AD2d 681, 685, *lv denied* 93 NY2d 872). The court carefully considered these and other factors but concluded that defendant's conduct and the "senseless violence" underlying these convictions demonstrated a "chilling" willingness to take a human life and exceeded any provocation. While the sequence of events in this street fight suggest that Wilson was an unintended victim and

that defendant was in a defensive posture in the fight at the time he pulled out the gun, they also demonstrate that defendant fired the gun in the direction of the fleeing combatants, the Youngs, amidst a fairly large group of bystanders. In view of the foregoing, we decline to reduce the sentence in the interest of justice (*see*, CPL 470.15 [2] [c]; [6] [b]).

Cardona, P. J., Crew III, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed.