■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILELLE JOHNSON, Appellant. [717 NYS2d 668] —Graffeo, J. Appeal from a judgment of the County Court of Columbia County

(Leaman, J.), rendered January 22, 1999, upon a verdict convicting defendant of the crime of murder in the first degree.

After a trial, defendant was convicted of murder in the first degree based on evidence that he shot the victim, his cousin, on Christmas Eve 1997 in the course of robbing the victim of a distinctive leather jacket. The District Attorney having withdrawn the notice of intent to seek the death penalty prior to trial, defendant was sentenced to life imprisonment without the possibility of parole.

An eyewitness who was familiar with both defendant and the victim testified at trial that he saw the two men engaged in a physical altercation on the street in the City of Hudson, Columbia County, on December 24, 1997 at approximately 9:15 P.M. In the course of the struggle, defendant wrested a leather jacket from the victim. When the victim approached him in an effort to retrieve it, defendant pulled out a gun and shot twice in his direction. One of the bullets struck the victim. Defendant was then observed by another acquaintance walking away from the area, gun and jacket in hand. The victim staggered to the ground, where he was immediately attended by onlookers until police officers and medical personnel arrived at the scene. While lying on the pavement, he repeatedly named defendant as his assailant. At the hospital emergency room, just before emergency surgery, the victim again twice indicated to police that defendant was the perpetrator. The victim died of the gunshot wound early the following morning.

On appeal, defendant first contends that the indictment should have been dismissed because the Grand Jury declined to hear the testimony of five witnesses who would have stated that defendant was intoxicated at the time of the shooting, evidence that defendant asserts would have supported an intoxication defense charge to the Grand Jury. We disagree. As a preliminary matter, because this is not a capital case, we have no occasion to address defendant's argument that the due process concerns implicated in such cases require a departure from the rules which ordinarily govern Grand Jury proceedings. Accordingly, we begin with the well-established proposition that the People "need not instruct the Grand Jury as to every conceivable defense suggested by the evidence, but ordinarily need instruct only as to those 'complete' defenses which the evidence will support" (*People v Lancaster*, 69 NY2d 20, 26, *cert denied* 480 US 922; *see*, *People v Valles*, 62 NY2d 36, 39). Complete defenses are those which, if credited by the Grand Jury, would " 'eliminat[e] a needless or unfounded prosecution' " (*People v Lancaster, supra*, at 27, quoting *People v*

*Valles, supra,* at 38; *see, People v Darrisaw,* 206 AD2d 661, 663). Thus, a prosecutor is under no obligation to present mitigating defenses to the Grand Jury (*see, People v Lancaster, supra,* at 30) because, if credited, they would merely result in conviction of a lesser charge. Where the People have no duty to instruct the Grand Jury as to a defense, there is no duty to seek out or to present evidence relating to that defense (*see, id.,* at 29).

Although intoxication is not a defense to a criminal charge, evidence of intoxication may be offered to negate any element of a crime charged (*see,* Penal Law § 15.25) with the caveat that such proof will not negate the presence of a "reckless" mental state (*see,* Penal Law § 15.05 [3]). In this case, even if the Grand Jury had been presented with and had credited evidence regarding defendant's inebriation, thereby negating the element of intent in the charge of murder in the first degree, the evidence would have warranted a charge of murder in the second degree under Penal Law § 125.25 (2), i.e., recklessly causing death under circumstances evincing a depraved indifference to human life. Indeed, this crime was charged in the alternative in the third count of the indictment. Assuming, arguendo, that there may be circumstances under which the People must present evidence of a defendant's intoxication to the Grand Jury, as it is evident that intoxication was not a complete defense which, if credited, would have eliminated this prosecution, we find that the People were neither obligated to present such evidence nor to charge the Grand Jury with respect thereto.

Moreover, upon a waiver of immunity, a defendant has the right to testify before the Grand Jury as to mitigating factors (*see,* CPL 190.50 [5] [a], [b]), but he or she has no concomitant right to demand that certain witnesses be called to do so. Whether such witnesses will be heard is left to the discretion of the Grand Jury (*see,* CPL 190.50 [6]). Upon review of the Grand Jury minutes in this case, the People having unequivocally established a prima facie case warranting prosecution, we see no basis for a finding that the Grand Jury abused its discretion in declining to call the witnesses requested by defendant. We note that defendant was free to present his witnesses in support of an intoxication defense at trial but did not do so, and the eyewitness called by the People expressed the opinion that defendant was not drunk at the time of the incident.

Next, we reject defendant's contention that County Court erred in admitting the statements of the victim identifying defendant as the perpetrator under the "excited utterance" excep-

tion to the hearsay evidentiary rule. An excited utterance is a statement arising from the "stress of excitement caused by an external event" (*People v Edwards*, 47 NY2d 493, 497) made when the speaker is governed by the "immediate and uncontrolled domination of the senses" (*People v Brown*, 70 NY2d 513, 518). Among the factors to be considered in determining whether such a statement is admissible is "the nature of the startling event * * * the amount of time which has elapsed between the occurrence and the statement * * * [and] the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth" (*People v Edwards, supra*, at 479). While the proponent must demonstrate that the statement was made before there was an opportunity to reflect or fabricate, this time period " 'is not measured in minutes or seconds' but rather 'is measured by facts' " (*People v Cotto*, 92 NY2d 68, 79, quoting *People v Vasquez*, 88 NY2d 561, 579 [internal quotations omitted]).

As the first of the victim's statements was made while he was lying on the pavement, moments after he was shot at close range, and the remaining comments were uttered less than an hour later at the hospital as he was about to undergo emergency surgery for his life-threatening injury, it is evident that the victim was still under the stress occasioned by the shooting and, as such, we concur with County Court that the statements were admissible as excited utterances (*see, People v Cotto, supra*, at 79; *People v Brooks*, 71 NY2d 877; *People v Nelson*, 266 AD2d 725, 726, *lv denied* 95 NY2d 801; *People v Davis*, 243 AD2d 831, 832-833).

Contrary to defendant's assertions, we find no error in County Court's rulings which allowed certain of defendant's statements to be admitted in evidence. The remarks by defendant that he intended to "get" the victim and that "someone [was] going to get it," both of which were made in the hours preceding the incident, were properly admitted in the People's case-in-chief as evidence of defendant's intent to shoot the victim, particularly as they tended to establish that the shooting was not accidental (*see, People v Ray*, 273 AD2d 611, 611-612; *People v Travis*, 273 AD2d 544; *People v Martin*, 245 AD2d 833, 833-834, *lv denied* 92 NY2d 856).

County Court further reasonably concluded after a *Huntley* hearing that three statements that defendant made to police after his arrest were admissible at trial. The first was made during police interrogation, after defendant was given *Miranda* warnings and just before he requested a lawyer, at which time the interview concluded. In response to an officer's question, he

stated, "I'll take my chances like Fat Jeff." According to the officer, this cryptic statement referred to a recent local case involving a defendant whose nickname was "Fat Jeff" and who had apparently proceeded to trial and received a brief sentence of incarceration. While we do not find this statement to be particularly inculpatory or probative, the court did not err in deeming it admissible under the circumstances as defendant did not rebut the evidence presented by the People at the *Huntley* hearing which established that the statement was voluntary, there being no indication of undue police coercion or other misconduct (*see,* CPL 60.45).

The other statements were made after defendant requested legal representation while he was in a vehicle with two police officers who were transporting him to the County Jail. According to the testimony adduced at the hearing, defendant initiated two brief conversations with the officers. In the first, he commented that he was not going to have a good Christmas because he had been "stupid" and, in the second, he questioned the officers concerning the penalty imposed in New York capital cases.*

We find that County Court did not err in allowing both series of statements made to the police officers while en route to the jail to be admitted because they were "neither provoked, induced nor encouraged by police conduct or interrogation" (*People v Masterson,* 248 AD2d 825, 826), but were made voluntarily and spontaneously in the course of a dialogue initiated and continued by defendant (*see, People v O'Hanlon,* 252 AD2d 670, 672, *lv denied* 92 NY2d 951; *People v Wergen,* 250 AD2d 1006, 1007; *People v Payne,* 233 AD2d 787, 788-789). That some of the statements were uttered in response to comments by the police officers does not, in itself, mandate suppression because the officers' comments were "completely spontaneous and not a studied effort to elicit information from defendant" (*People v Payne, supra,* at 789). However, were we to find otherwise, we would deem any error in the admission of these statements to be harmless in light of the overwhelming evidence of defendant's guilt, particularly as the statements do not directly inculpate defendant in the crime charged (*see, People v Pope,* 241 AD2d 756, 759-760, *lv denied* 91 NY2d 1011).

Nor is reversal of the conviction warranted due to prosecuto-

---

* In the *Huntley* ruling, County Court held that it would allow evidence of defendant's initial question about the penalty, but not his reply to the police officer's response. However, at trial the court allowed the police officer to testify concerning the reply.

rial misconduct during the summation. We find that the People did not mischaracterize the proof but merely observed that the victim had identified his cousin, defendant, as the perpetrator based on the extensive evidence presented that he advised numerous persons, including police officers, of the identity of the person who shot him. Regardless of whether the victim actually referred to defendant using the phrase "my cousin, Wilelle Johnson," the People's remarks to that effect amounted to fair comment and, as such, were not improper (*see, People v Persons*, 245 AD2d 845, 846).

Defendant also asserts that the verdict was not supported by sufficient proof and was against the weight of the evidence. We are convinced upon review of the trial transcript that defendant is incorrect on both counts. Viewing the evidence in the light most favorable to the People, we find that the unequivocal testimony of the eyewitness who saw defendant shoot the victim and grab his jacket, coupled with the medical testimony that the victim died as a result of his wounds, was sufficient in and of itself to establish a prima facie case of murder in the first degree (*see*, Penal Law § 125.27 [1] [a] [vii]; *see generally, People v Demand*, 268 AD2d 901, *lv denied* 95 NY2d 795; *People v Lake*, 235 AD2d 921, 922, *lv denied* 89 NY2d 1096).

The People presented a second witness to the incident who generally corroborated the first eyewitness's account of the events, although he did not know the parties and was unable to identify defendant as the perpetrator. In addition to the admission of the victim's statements identifying defendant as his assailant and the two threatening statements made by defendant within 24 hours of the shooting, several witnesses testified that they saw defendant in the vicinity of the crime with a gun soon after the shooting occurred; at least one noticed that defendant was carrying a gun and a jacket matching the description of the victim's jacket. Considering the proof in a neutral light, but according deference to the jury's opportunity to hear the testimony and observe the demeanor of the witnesses, we conclude that the verdict of murder in the first degree was not against the weight of the evidence (*see, People v Demand, supra*, at 904; *People v Lake, supra*, at 922). Indeed, based on the strength of the People's case and the fact that defendant did not call any witnesses on his behalf, our review of the trial transcript leads us to observe that the evidence of guilt was overwhelming.

Finally, we reject defendant's argument that the sentence imposed, life imprisonment without the possibility of parole, was harsh and excessive. We acknowledge the significance of

such a sentence for defendant, who was only 21 years of age at the time of the shooting, and we are not unsympathetic to the difficulties he encountered as a child and young adult. However, given the particularly senseless nature of the crime, which involved the murder of an 18-year-old relative for which defendant expressed no remorse, and in view of defendant's extensive criminal record, we cannot say that County Court abused its discretion by concluding that the maximum sentence was warranted (*see, People v Demand, supra,* at 904-905). Accordingly, the sentence will not be disturbed.

Defendant's remaining contentions, to the extent not addressed, have been considered and found to be unpersuasive.

Cardona, P. J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.