Peters, P.J.
After a jury trial, defendant was convicted of murder in the first degree, robbery in the first degree, attempted robbery in the first degree and criminal possession of a weapon in the second degree. He was sentenced to life imprisonment without the possibility of parole for his conviction of murder in the first degree, to run concurrently with two 15-year prison terms for his convictions of attempted robbery in the first degree and criminal possession of a weapon in the second degree. For his conviction of robbery in the first degree, defendant was sentenced to a consecutive prison term of 25 years with five years of postrelease supervision. He now appeals.
Defendant claims that portions of two letters he allegedly *1257 wrote to friends from prison should have been redacted as the fruit of a violation of his indelible right to counsel. In the letters, written just two days after he was questioned by police in violation of his right to counsel, defendant recounted portions of his earlier interview and admitted to having shot Bailey. While defendant contends that these admissions constitute “fruit of the poisonous tree” because, had the police not conducted their illegal interview of him, he would not have recited the substance of that interview in his subsequent letters, we disagree.
Evidence is not fruit of the poisonous tree simply because it would not have come to light “but for” the illegal police conduct (see Hudson v Michigan, 547 US 586, 592 [2006]; Segura v United States, 468 US 796, 815 [1984]; Wong Sun v United States, 371 US 471, 487-488 [1963]). “[R]ather, the dispositive inquiry is whether the challenged evidence is come at by the exploitation of that illegality so as to make it the product of that illegality” (People v Richardson, 9 AD3d 783, 789 [2004], lv denied 3 NY3d 680 [2004]; see Wong Sun v United States, 371 US at 488; People v Arnau, 58 NY2d 27, 32 [1982]). Here, police neither directed, encouraged nor enticed defendant to write the letters. Rather, they were unsolicited, spontaneous admissions to his friends made at a time when he was free of any coercive effects that may have induced his earlier statements. Thus, Supreme Court properly determined that exclusion was not warranted (see People v Talamo, 55 AD2d 506, 508 [1977]; compare People v Grimaldi, 52 NY2d 611, 617 [1981]; People v Moss, 179 AD2d 271, 275 [1992], lv dismissed 80 NY2d 932 [1992]).
Defendant next contends that his convictions for murder in the first degree, attempted robbery in the first degree and criminal possession of a weapon in the second degree are not supported by legally sufficient evidence and are against the weight of the evidence. Specifically, he claims that the People failed to establish his identity as the shooter or that, in firing the fatal shot, he possessed the requisite intent to cause Bailey’s death. To convict defendant of the crime of murder in the first degree, the People were required to prove that, “[w]ith [the] intent to cause the death of another person, [defendant] cause[d] the death of such person . . . [while] in the course of committing or attempting to commit and in furtherance of robbery” (Penal Law § 125.27 [1] [a] [vii]).
The trial testimony established that on the evening of October 20, 2008, upon defendant’s suggestion that they “get some free money,” defendant, King Modest and Ricardo Caldwell left *1258 Caldwell’s home, located just a few blocks away from the scene of the instant crimes, on bicycles. Modest and Caldwell explained that, after an unsuccessful attempt to rob an individual on Northern Boulevard,[1] the three continued on towards Madison Avenue, at which point they spotted Bailey near South Lake Avenue and made the decision to rob him. Defendant and Caldwell took off towards Bailey, while Modest remained at the corner. Caldwell recounted that defendant reached Bailey first and, upon confronting him, Bailey started running, at which time Caldwell turned his bicycle around and rode in the opposite direction. Just seconds later, he heard a gunshot. Caldwell, Modest and a friend of defendant’s who took no part in the incident each testified that defendant later told them that he shot Bailey. Notably, defendant also admitted to having shot Bailey in the two letters that he wrote from jail. Furthermore, a woman who witnessed the immediate aftermath of the shooting explained that she saw a young person matching defendant’s description crouched down near Bailey’s body before fleeing the scene, and cell phone evidence placed defendant in the vicinity of the crime scene at the time of the murder.
As for the element of intent, it “may be inferred from a defendant’s conduct and the surrounding circumstances” (People v Booker, 53 AD3d 697, 703 [2008], lv denied 11 NY3d 853 [2011]; see People v Hatchcock, 96 AD3d 1082, 1084 [2012], lv denied 19 NY3d 997 [2012]), as well as “from the act itself’ (People v Bracey, 41 NY2d 296, 301 [1977]). Here, the doctor who performed the autopsy on Bailey explained that the gun was “very close” to Bailey’s head when the bullet was fired, and was “possibly touching it.” “[E]vidence that a person ‘fired a shot at close range into [another’s] head [is] sufficient to support the inference that [the person] intended to kill the victim’ ” (People v Holmes, 260 AD2d 942, 943 [1999], lv denied 93 NY2d 1020 [1999], quoting People v Lawrence 186 AD2d 1016, 1017 [1992], lv denied 81 NY2d 790 [1993]; see People v Bryant, 36 AD3d 517, 518 [2007], lv denied 8 NY3d 944 [2007]; People v *1259 Lewis, 277 AD2d 603, 606 [2000], lv denied 95 NY2d 966 [2000]). Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]; People v Thomas, 93 AD3d 1019, 1028 [2012], lv granted 19 NY3d 1105 [2012]), we find that it was legally sufficient to sustain the jury’s guilty verdict on the murder, attempted robbery and weapon possession counts.
Likewise, upon the exercise of our factual review power (see People v Romero, 7 NY3d 633, 643-644 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]), we reject defendant’s claim that the verdict on these counts is against the weight of the evidence. The fact that Modest and Caldwell were testifying pursuant to cooperation agreements in which they received leniency was fully developed at trial and highlighted to the jury, and did not render their testimony unworthy of belief as a matter of law (see People v Moyer, 75 AD3d 1004, 1006 [2010]; People v Vargas, 60 AD3d 1236,1238 [2009], lv denied 13 NY3d 750 [2009]; People v Wright, 22 AD3d 873, 875-876 [2005], lv denied 6 NY3d 761 [2005]). While certain witnesses testified that defendant described the shooting as an accident, and there was no DNA or fingerprint evidence linking defendant to the letters in which he admitted to having shot Bailey, this created credibility issues for the jury to resolve. Evaluating the evidence in a neutral light, weighing the probative force of the conflicting testimony and considering the relative strength of the inferences to be drawn therefrom, while giving due deference to the jury’s credibility determinations (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Bleakley, 69 NY2d at 495), we conclude that the jury gave the evidence the weight it should be accorded.
Defendant’s challenge to the sufficiency and weight of the evidence supporting his conviction of robbery in the first degree is similarly without merit. Knauth testified that he was walking towards his home on Yates Street in the City of Albany on the evening of October 20, 2008 when a young black male on a bicycle pointed a gun to the left side of his neck, demanded that he “give [defendant] everything” and then hit him with the butt of the gun. This crime occurred minutes after and within a few blocks of the shooting, and the testimony regarding defendant’s clothing and appearance on the night of the incident matched Knauth’s description of his assailant. Evidence was also presented that defendant, Modest and Caldwell separated from each other immediately after the shooting, that Caldwell and Modest reconvened at Caldwell’s house shortly thereafter and that defendant did not arrive until later. Thus, while Knauth could not positively identify defendant as the robber, we *1260 find that the People presented sufficient circumstantial evidence from which defendant’s identity could be reasonably inferred (see People v Birmingham, 261 AD2d 942, 942 [1999], lv denied 93 NY2d 1014 [1999]; People v Welcome, 181 AD2d 628, 628 [1992], lv denied 79 NY2d 1055 [1992]; see also People v Hall, 57 AD3d 1229, 1230 [2008], lv denied 12 NY3d 784 [2009]).
We next address defendant’s assertion that Supreme Court erred in denying his Batson objections (see Batson v Kentucky, 476 US 79 [1986]). During the first round of jury selection, the People exercised peremptory challenges to four of the five African-American jurors on the panel and, during the second round, exercised peremptory challenges to one of the two African-American jurors on the panel.[2] Defendant, in response, raised Batson objections, claiming that the People’s use of those peremptories demonstrated a pattern of purposeful discrimination. Supreme Court found that defendant had made a prima facie case,[3] thereby shifting the burden to the People to offer a facially neutral explanation for each challenge (see People v Hecker, 15 NY3d 625, 634 [2010], cert denied sub nom. Black v New York, 563 US —, 131 S Ct 2117 [2011]; People v Smocum, 99 NY2d 418, 420 [2003]).
The prosecutor explained that juror No. 5 appeared “sloppily dressed,” “aloof” and was not good at following Supreme Court’s instructions. He stated that he “had zero connection with” juror No. 8, noting that this juror “chuckl[ed]” while he was commenting about certain witnesses, and explained his belief that this self-described “efficient” juror would not view the prosecution favorably during this complex case. As for juror No. 19, the prosecutor expressed concern that this juror might sympathize with defendant due to the fact that she worked for a defense attorney, and stated that the juror’s failure to be forthright in her answer to the court’s inquiry as to whether any of the prospective jurors had ever been accused of a crime “g[a]ve[ ] [him] some pause.” Noting juror No. 20’s statement that he had been falsely accused of a crime, the prosecutor believed that this juror may likewise be unduly sympathetic to *1261 defendant. Finally, the prosecutor recounted juror No. 14’s choice of “stubborn” as a word to describe herself, which he felt would not be a good quality for a juror to have in this case.
The prosecutor’s explanations, which need not be persuasive or plausible but only “facially permissible” (People v Smocum, 99 NY2d at 422; see Purkett v Elem, 514 US 765, 768 [1995]; People v Morgan, 24 AD3d 950, 951 [2005], lv denied 6 NY3d 815 [2006]), were race neutral and overcame any inference of discrimination set forth by the defense (see People v Ardrey, 92 AD3d 967, 970 [2012], lv denied 19 NY3d 865 [2012]; People v Simmons, 31 AD3d 1051, 1053 [2006], lv denied 7 NY3d 929 [2006]). Defense counsel’s responses mostly failed to address the specific reasons given for challenging each juror at issue (see People v Knowles, 79 AD3d 16, 21 [2010], lv denied 16 NY3d 896 [2011]; People v Skervin, 13 AD3d 661, 662 [2004], lv denied 5 NY3d 833 [2005]), and defendant cannot now make arguments not advanced before Supreme Court in an effort to demonstrate that those reasons were merely a pretext (see People v Smocum, 99 NY2d at 423; People v Lee, 80 AD3d 877, 879 [2011], lv denied 16 NY3d 833 [2011]). Under these circumstances and deferring to Supreme Court’s credibility determinations, we discern no basis to disturb the court’s finding that the People’s explanations were race neutral and not pretextual (see People v Ardrey, 92 AD3d at 969-970; People v Knowles, 79 AD3d at 21-22; People v Simmons, 31 AD3d at 1053). Contrary to defendant’s further contention, the court, in making its determination on the issue of discriminatory intent, “was entitled to take into consideration the totality of the facts and circumstances, including its own observations of the jurors and counsel and the additional information gleaned from the jurors during voir dire” (People v Knowles, 79 AD3d at 23).
Nor did Supreme Court abuse its discretion in denying defendant’s challenge for cause to prospective juror No. 13. When asked his understanding of the responsibility of a juror, juror No. 13 stated that he felt his role was to render a verdict and provide closure for the victims’ families as well as defendant. The juror’s response did not indicate any actual bias or otherwise cast serious doubt on his ability to be impartial (see CPL 270.20 [1] [b]; People v Chambers, 97 NY2d 417, 419 [2002]; People v Johnson, 94 NY2d 600, 614 [2000]). Moreover, after additional questioning by defense counsel, juror No. 13 affirmed that he would render a verdict based on the evidence and determine whether the People established defendant’s guilt beyond a reasonable doubt (see People v Franklin, 7 AD3d 966, 967 [2004], lv denied 3 NY3d 756 [2004]; People v Feliciano, 285 AD2d 371, 371 [2001], lv denied 96 NY2d 939 [2001]).
*1262 Defendant’s contention that Supreme Court should have compelled the testimony of a defense witness who invoked his Fifth Amendment privilege against self-incrimination is likewise without merit. A “witness is the judge of his [or her] right to invoke the privilege” (People v Arroyo, 46 NY2d 928, 930 [1979]) and may do so “based upon the fact that the proposed testimony would be so inconsistent with prior statements under oath as to expose him [or her] to conviction for perjury” (People v Bagby, 65 NY2d 410, 413-414 [1985]; see People v Shapiro, 50 NY2d 747, 759-760 [1980]). Here, based upon the court’s inquiry of the witness — who was accompanied by counsel — outside the presence of the jury, there was no basis from which to conclude that the witness’s invocation of the privilege was “clearly contumacious” (Matter of Grae, 282 NY 428, 433 [1940]), nor was it “patently clear that the witnesses] answer [could not] subject him to prosecution” (State of New York v Skibinski, 87 AD2d 974, 974 [1982]; see People ex rel. Taylor v Forbes, 143 NY 219, 230-231 [1894]). Thus, Supreme Court properly refused to compel him to testify (see People v Grimes, 289 AD2d 1072, 1073 [2001], lv denied 97 NY2d 755 [2002]; People v Faulk, 255 AD2d 333, 334 [1998], lv denied 93 NY2d 970 [1999]; People v Murphy, 176 AD2d 899, 899 [1991], lv denied 79 NY2d 861 [1992]).[4]
Similarly unavailing is defendant’s assertion that Supreme Court erred in permitting the People to introduce evidence of a prior consistent statement made by Modest implicating defendant as the shooter of Bailey. “If upon cross-examination a witnesses] testimony is assailed — either directly or inferentially — as a recent fabrication, the witness may be rehabilitated with prior consistent statements that predated the motive to falsify” (People v McDaniel, 81 NY2d 10, 18 [1993]; see People v McClean, 69 NY2d 426, 428-429 [1987]). On cross-examination, defense counsel extensively questioned Modest regarding the fact that he was testifying pursuant to a plea agreement whereby he was able to escape prosecution for the crimes of murder in the second degree and robbery in the first degree in exchange for his plea of guilty to the crime of attempted robbery in the second degree and his promise to cooperate with the People in their prosecution of defendant. This line of questioning created the inference that the favorable plea deal that Modest accepted provided him with a motive to testify falsely about defendant’s involvement in the crimes (see People v McClean, 69 *1263 NY2d at 429; People v Garrett, 88 AD3d 1253, 1254-1255 [2011], lv denied 18 NY3d 883, [2012]; People v Wright, 62 AD3d 916, 918 [2009], lv denied 13 NY3d 751 [2009]). As a result, the People sought to introduce an audio recording of a June 2009 conversation between Modest and a friend who, unbeknownst to Modest, was wearing a wire. During the conversation, Modest made a statement implicating defendant as the shooter. Since this prior consistent statement not only predated the plea agreement, but was made months before Modest or defendant were arrested for the crimes stemming from the October 20, 2008 incident, it was properly admitted into evidence to rehabilitate his credibility as a witness (see People v Umali, 10 NY3d 417, 429 [2008]; People v Garrett, 88 AD3d at 1255; People v Wright, 62 AD3d at 918; People v Hughes, 287 AD2d 872, 876 [2001], lv denied 97 NY2d 656 [2001]; compare People v McClean, 69 NY2d at 430).[5]
Defendant next contends that Supreme Court abused its discretion in permitting the People to provide opinion testimony from a handwriting expert as to whether defendant authored the letters sent from prison. The expert explained to the jury that, after he obtained copies of the letters (the “disputed” writings), defendant was directed to rewrite them five times in his presence (the “known” writings). Based upon his assessment of a number of characteristics found to be consistent between the disputed and known writings of defendant, the expert opined that defendant had authored the letters.
CPLR 4536 expressly permits, by either an expert or lay witness, “[c]omparison of a disputed writing with any writing proved to the satisfaction of the court to be the handwriting of the person claimed to have made the disputed writing” (see People v Hunter, 34 NY2d 432, 435-436 [1974]; People v Fields, 287 AD2d 577, 578 [2001], lv denied 97 NY2d 681 [2001]; see also CPL 60.10). Thus, once Supreme Court determined that the known writings introduced by the People were indeed those of defendant, expert testimony was permissible (see CPLR 4536). While defendant maintains that the witness should only have been permitted to testify as to the similarities and differences between the disputed and known writings without concluding whether defendant wrote the letters, the scope and limits of expert testimony lie within the sound discretion of the trial court (see People v Bedessie, 19 NY3d 147, 156 [2012]; People v *1264 Lee, 96 NY2d 157, 162 [2001]; People v Thomas, 93 AD3d at 1030), and its determination will not be disturbed “ ‘absent a showing of serious mistake, error of law or abuse of discretion’ ” (People v Thomas, 93 AD 3d at 1031, quoting People v Fish, 235 AD2d 578, 579-580 [1997], lv denied 89 NY2d 1092 [1997]). No such showing has been made here.
Nor were the People required to give notice of their intention to introduce a statement that defendant made to police identifying his cell phone number during the process of his arrest on an unrelated charge (see CPL 710.30). Defendant’s cell phone number constituted pedigree information that was obtained in response to a routine administrative question and was “reasonably related to . . . administrative concerns” (People v Rodney, 85 NY2d 289, 293 [1995] [internal quotation marks and citations omitted]; see People v Buchanan, 95 AD3d 1433, 1435 [2012]). There is no evidence that the question was a disguised attempt at investigatory interrogation, nor was the inquiry reasonably likely to elicit an incriminating response under the circumstances (see People v Rodney, 85 NY2d at 293; People v Roberts, 63 AD3d 1294, 1296 [2009]; People v Velazquez, 33 AD3d 352, 354 [2006], lv denied 7 NY3d 929 [2006]).
Defendant also argues that Supreme Court erred in denying his request to charge manslaughter in the first degree as a lesser included offense of murder in the first degree. “[W]here a court charges the next lesser included offense of the crime alleged in the indictment, but refuses to charge lesser degrees than that, . . . the defendant’s conviction of the crime alleged in the indictment forecloses a challenge to the court’s refusal to charge the remote lesser included offenses” (People v Boettcher, 69 NY2d 174, 180 [1987]). Here, the jury convicted defendant of murder in the first degree even though it was charged with the lesser included offense of murder in the second degree (see generally People v Miller, 6 NY3d 295, 302-303 [2006]). Consequently, defendant is foreclosed from challenging the court’s failure to charge the more remote lesser included offense of manslaughter in the first degree, even if such a charge was available on the facts (see People v Green, 5 NY3d 538, 545 [2005]; People v Waugh, 52 AD3d 853, 855 [2008], lv denied 11 NY3d 796 [2008]).
Finally, we reject defendant’s claim that his sentence was harsh and excessive. He committed a heinous, senseless, murder of an unarmed 19 year old and, just minutes later, held a gun to the head of another innocent victim, threatening his life. Although defendant was only 18 years old at the time of the offenses, he nevertheless had managed to amass an extensive criminal history, including previous felony convictions for gun- *1265 related offenses, and was arrested and later convicted for possession and discharging of a handgun just one month after committing the instant crimes. Under these circumstances, we find no abuse of discretion or extraordinary circumstances warranting modification in the interest of justice (see People v Burnell, 89 AD3d 1118,1122 [2011], lv denied 18 NY3d 922 [2012]; People v Hansen, 290 AD2d 47, 57 [2002], affd 99 NY2d 339 [2003]; People v Johnson, 277 AD2d 702, 708 [2000], lv denied 96 NY2d 831 [2001]; People v Demand, 268 AD2d 901, 904-905 [2000], lv denied 95 NY2d 795 [2000]).
Defendant’s remaining contentions have been fully reviewed and found to be without merit.
Lahtinen, Kavanagh, Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

. Supreme Court properly permitted the People to introduce evidence of this uncharged robbery, as it was inextricably interwoven with the accomplices’ recitation of events leading up to the attack, provided necessary background information and completed the narrative of the events leading up to the death of Bailey (see People v Mullings, 23 AD3d 756, 758 [2005], lv denied 6 NY3d 756 [2005]; People v Tarver, 2 AD3d 968, 969 [2003]; People v Shannon, 273 AD2d 505, 507 [2000], lv denied 95 NY2d 892 [2000]). As the probative value of such proof outweighed its prejudicial effect, and Supreme Court provided limiting instructions to the jury both at the time that such evidence was introduced as well as in its final charge, we discern no error (see People v Lee, 80 AD3d 877, 880 [2011], lv denied 16 NY3d 833 [2011]; People v Mullings, 23 AD3d at 758).

. The two remaining African-American prospective jurors served as members of the jury.

. As the People were provided with an opportunity to offer race-neutral explanations for the challenges and Supreme Court ruled on the ultimate question of purposeful discrimination, the preliminary issue of whether defendant made a prima facie showing is moot (see People v Smocum, 99 NY2d 418, 422 [2003]; People v Ardrey, 92 AD3d 967, 969 n 3 [2012], lv denied 19 NY3d 865 [2012]; People v Williams, 306 AD2d 691, 691-692 [2003], lv denied 1 NY3d 582 [2003]).

. Defendant failed to preserve his further contention that the People should have granted immunity to this witness (see People v Grimes, 289 AD2d at 1073).

. The statement was not, as defendant contends, required to predate all possible motives to falsify in order to be admissible (see People v Baker, 23 NY2d 307, 322-323 [1968]; People v White, 294 AD2d 295, 296 [2002], lv denied 98 NY2d 714 [2002]).