People v Hodge (2024 NY Slip Op 00945)

People v Hodge

2024 NY Slip Op 00945

Decided on February 22, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 22, 2024

110488
[*1]The People of the State of New York, Respondent,
v
Gabriel Hodge, Appellant.

Calendar Date:January 19, 2024

Before:Egan Jr., J.P., Clark, Pritzker, Fisher and Powers, JJ.

Gail B. Rubenfeld, Monticello, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Clark, J.
Appeal from a judgment of the Supreme Court (Kathleen B. Hogan, J.), rendered March 8, 2018 in Schenectady County, upon a verdict convicting defendant of the crimes of robbery in the second degree (two counts), attempted robbery in the second degree and petit larceny (two counts).
Between May 13 and May 15, 2017, Victor Mattson (hereinafter the codefendant) used a BB gun that resembled a real handgun to rob a Dollar General, a Rite Aid and a Family Dollar store and to attempt to rob a CVS, all located in Schenectady County. Defendant and the codefendant were arrested and charged by indictment with three counts of robbery in the second degree and one count of attempted robbery in the second degree; defendant was also charged with two counts of petit larceny. According to the codefendant, defendant helped plan the robberies and acted as his getaway driver, and, in exchange for a reduced sentence, the codefendant agreed to plead guilty and testify against defendant. Following a jury trial, defendant was acquitted of the count of robbery in the second degree related to the Rite Aid robbery, but was convicted of the two counts of robbery in the second degree pertaining to the Dollar General and Family Dollar robberies, the count of attempted robbery in the second degree regarding CVS and both counts of petit larceny. Defendant was sentenced, as a second violent felony offender, to an aggregate prison term of 10 years, to be followed by five years of postrelease supervision. Defendant appeals.
Initially, defendant made only a general motion to dismiss the indictment at the close of the People's case, and the failure both to premise his motion on the specific grounds upon which he now relies and to renew such specific motion at the close of all the proof renders his challenge to the legal sufficiency of the evidence unpreserved (see People v Gentry, 218 AD3d 919, 921 [3d Dept 2023], lv denied 40 NY3d 1012 [2023]; People v Abreu, 195 AD3d 1152, 1153 [3d Dept 2021], lv denied 37 NY3d 1144 [2021]; People v Meadows, 183 AD3d 1016, 1016-1017 [3d Dept 2020], lv denied 35 NY3d 1047 [2020]). Nevertheless, in reviewing defendant's contention that his convictions for two counts of robbery in the second degree and one count of attempted robbery in the second degree are contrary to the weight of the evidence, we necessarily evaluate whether every element of each crime was proven beyond a reasonable doubt (see People v Franklin, 216 AD3d 1304, 1305 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Barzee, 190 AD3d 1016, 1017 [3d Dept 2021], lv denied 36 NY3d 1094 [2021]). "When undertaking such review, we must first view the evidence in a neutral light to determine whether a contrary verdict would have been unreasonable; if not, we defer to the jury's credibility determinations and consider the relative probative force of conflicting testimony and the relative strength of the conflicting inferences that may be drawn therefrom to determine whether the weight of [*2]the evidence supports the verdict" (People v Oates, 222 AD3d 1271, 1272 [3d Dept 2023] [citations omitted]; see People v Martinez, 166 AD3d 1292, 1293 [3d Dept 2018], lv denied 32 NY3d 1207 [2019]).
As relevant here, "[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law § 160.10 [2] [b]). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). Importantly, such "[c]orroborative evidence need not show that the defendant was connected with the commission of the crime; it is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (People v Ashe, 208 AD3d 1500, 1502 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 39 NY3d 961 [2022]; see People v Heimroth, 181 AD3d 967, 968 [3d Dept 2020], lv denied 35 NY3d 1027 [2020]).
The codefendant testified that, on May 13, 2017, he and defendant agreed to commit a series of robberies and split the proceeds. That same day, the two traveled on bicycles to a Dollar General store near defendant's home, as defendant was concerned that his vehicle would be recognized. The codefendant planned to enter the store alone, pose as a customer checking out and, while the register was open, the codefendant would pull out a BB gun and demand money from the cashier. However, after the codefendant entered the store, he became nervous and delayed approaching the register; defendant then entered the store. According to the codefendant, he and defendant had a brief conversation where defendant encouraged him to go through with the robbery. Soon after, the codefendant executed the plan and left the store; thereafter, he split the proceeds with defendant.[FN1]
The codefendant testified that they planned to commit more robberies the next day, May 14, 2017. However, after discovering that defendant's girlfriend had taken the BB gun, the two traveled to a Walmart located in the Town of Glenville, Schenectady County, where they bought a cheap BB gun that looked like a real handgun. According to the codefendant, he and defendant discussed their options in the Walmart aisle, and defendant agreed to split the cost of the BB gun. The two then drove around looking for their next target and decided to rob a Family Dollar store because the parking lot looked empty. [*3]According to the codefendant, defendant parked his vehicle across the street and waited there while the codefendant went into the store, robbed it using the same ruse and ran back to the vehicle; defendant then drove away, and the two split the proceeds.
The next day, May 15, 2017, defendant drove the two of them to a CVS. The codefendant asserted that defendant parked his vehicle behind the store and went inside to get tooth medication and scope out the cashier. When defendant returned and confirmed that there was a female cashier, whom he thought would be a more compliant target, the codefendant went inside with a plan to use the same ploy. However, by the time the codefendant displayed the BB gun, the cashier had already closed the register. The cashier then screamed for her manager, causing the codefendant to panic and run back to defendant's vehicle. Defendant then drove to a Walmart located in the Town of Rotterdam, Schenectady County, where the two purchased another BB gun and split the cost. Later that day, the codefendant told defendant to drive to a store in the Village of Ballston Spa, Saratoga County so they could rob it.[FN2] Defendant waited in the car while the codefendant robbed the store; when the codefendant returned, defendant drove them both away.
The codefendant admitted to an extensive criminal history. He also admitted that his testimony was given in accordance with a plea agreement that allowed him to receive a lighter sentence for the string of robberies — specifically, he would be sentenced to a prison term of eight years, avoiding, he believed, exposure to a 30-year prison term.
Defendant contends that the codefendant's testimony was uncorroborated and that, because of the significant benefit he received, his testimony should be found incredible as a matter of law. We disagree. As to the Dollar General robbery, the store manager and cashier both recognized defendant as a regular customer and placed him in the store during the robbery. Surveillance video from inside the store further confirmed defendant's presence and the series of events as the codefendant described them. With respect to the Family Dollar robbery, street surveillance videos captured defendant's vehicle driving around in the minutes preceding the robbery, again confirming the codefendant's testimony. As to the attempted robbery of the CVS, the cashier testified that a few minutes before the robbery, defendant approached her, asked about the price of tooth medication, complained about the price and left. Further, an eyewitness saw a tall man running out of the CVS toward the back of the store, where a black vehicle with out-of-state license plates was parked; shortly after the man rounded the corner, the vehicle drove off. Security footage from the Walmart stores captured defendant and the codefendant browsing the BB gun options and buying a BB gun at each store. During the Saratoga County robbery, an employee of a nearby business saw a black vehicle with out[*4]-of-state license plates parked by the side of her workplace and saw the driver throw a bottle out of the window; she picked it up and threw it away in a trash can inside her workplace. A few minutes later, when the police arrived, she shared her observations and led them to the bottle.
A forensic scientist with the New York State Forensic Investigation Center testified that the DNA analysis from the bottle did not lead to a specific match. However, she explained that Y-STR DNA testing, which isolates the exclusively male Y chromosome and identifies the paternal line from which that chromosome originates, was a match for either defendant or another male member of defendant's family. A detective with the Schenectady Police Department testified that, on May 16, 2017, he received a tip about the location of a dark-colored vehicle with out-of-state plates that had been connected to the robberies, which led to defendant and the codefendant being taken into custody. According to the detective, defendant admitted to owning the vehicle, to having been with the codefendant over the preceding days and to stealing the tooth medication from CVS but denied any involvement in the robberies. The same day, a State Police investigator stationed in Saratoga County took a statement from defendant. According to the investigator, defendant initially denied having been in Saratoga County the day prior but then said that he had let the codefendant drive and had fallen asleep in the backseat, so he did not know where he was when he woke up. The investigator said that defendant also admitted that he had been with the codefendant over the preceding days, that he had stolen the tooth medication from CVS and that he accompanied the codefendant to the two Walmart locations while the codefendant purchased the BB guns. However, defendant denied any knowledge about the robberies. Defendant's statement was reduced to writing and later admitted into evidence at trial. An evidence technician with the Schenectady Police Department testified that he searched defendant's vehicle and found a backpack containing various items that the codefendant was observed wearing during the robberies as well as a BB gun. Having considered the extensive evidence presented, we find that the testimony from the various civilian and law enforcement witnesses, the video, photographic and forensic evidence and defendant's own written statement all corroborate the codefendant's testimony, as such evidence connects defendant to various crimes such that the jury could be reasonably satisfied as to the veracity of the codefendant's testimony (see People v Rivera, 212 AD3d 942, 948 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]; People v Ashe, 208 AD3d at 1505; People v Lawrence, 141 AD3d 828, 832-833 [3d Dept 2016], lv denied 28 NY3d 1073 [2016]; People v Faulkner, 36 AD3d 951, 951-952 [3d Dept 2007], lv denied 8 NY3d 922 [2007]).
Following the close of the People's proof, defendant testified on his own behalf [*5]and admitted to his own criminal history, which included a felony conviction. He also admitted that he stole tooth medication from CVS and clothing items from the Walmart stores.[FN3] However, defendant denied that he had ever accepted any money from the codefendant or split the costs of the BB guns; rather, he asserted that he had given the codefendant $1 for the first BB gun and $2 for the second because the codefendant did not have enough money to buy them. Ultimately, defendant denied any involvement with, or knowledge about, the robberies. Although a different verdict would not have been unreasonable given the series of explanations provided by defendant to justify his presence at the various crime scenes, we defer to the jury's credibility determinations "based upon its superior vantage point and its opportunity to view witnesses, observe demeanor and hear the testimony" (People v Hanes, 218 AD3d 1175, 1176 [4th Dept 2023] [internal quotation marks and citation omitted], lv denied ___ NY3d ___ [Jan. 3, 2024]). Here, the jury was presented with the codefendant's plea agreement and weighed his credibility, considering the corroborating testimony from the numerous witnesses, photographs, videos and the Y-STR DNA evidence, and the jury found that defendant and the codefendant had displayed what appeared to be a firearm to forcibly steal property from the Dollar General and Family Dollar stores, and that they attempted to forcibly steal from CVS using the same means. Viewing the evidence in a neutral light, weighing the probative force of the conflicting testimony and considering the relative strength of the inferences to be drawn therefrom, while deferring to the jury's credibility determinations, we find that the verdict convicting defendant of two counts of robbery in the second degree and one count of attempted robbery in the second degree is supported by the weight of the evidence (see People v Scott, 219 AD3d 1572, 1575-1576 [3d Dept 2023]; People v Shabazz, 211 AD3d 1093, 1097-1099 [3d Dept 2022], lv denied 39 NY3d 1113 [2023]; People v Cloonan, 166 AD3d 1063, 1064-1065 [3d Dept 2018], lv denied 35 NY3d 941 [2020]).
Next, we turn to defendant's argument that Supreme Court erred in allowing the People to introduce evidence of the Saratoga County robbery, as the prejudicial effect of such evidence far outweighed its probative value. To determine whether evidence of uncharged crimes or prior bad acts may be admitted, the trial court must engage in a two-part inquiry (see People v Cass, 18 NY3d 553, 560 [2012]; People v Hudy, 73 NY2d 40, 55 [1988]). The first part of the inquiry is a threshold issue and requires the trial court to determine whether the proffered evidence "establishes an element of the crime charged, is inextricably interwoven with the charged crime, provides necessary background, completes a witness's narrative, or falls within the five general Molineux exceptions — i.e., motive, intent, absence of mistake, common plan or scheme [*6]and identity" (People v Hebert, 218 AD3d 1003, 1009 [3d Dept 2023] [internal quotation marks, ellipses and citations omitted], lv denied 40 NY3d 1080 [2023]; see People v Restifo, 220 AD3d 1113, 1118 [3d Dept 2023], lv denied ___ NY3d ___ [Jan. 12, 2024]). This first determination is reviewable as a pure question of law (see People v Telfair, ___ NY3d ___, ___, 2023 NY Slip Op 05965, *2 [2023]; People v Alvino, 71 NY2d 233, 242 [1987]). If the first part of the inquiry is satisfied, the trial court must proceed to the second part, and it may admit the evidence if it finds that "the probative value of the evidence outweighs its potential for prejudice" (People v Telfair, 2023 NY Slip Op 05965 at *2 [internal quotation marks and citations omitted]; see People v Cass, 18 NY3d at 560). This determination may only be reversed where it "constitute[s] an abuse of discretion as a matter of law" (People v Telfair, 2023 NY Slip Op 05965 at *2 [internal quotation marks and citations omitted]; see People v Hudy, 73 NY2d at 55).
We agree with Supreme Court that evidence concerning the Saratoga County robbery was inextricably interwoven with the circumstances surrounding the involvement of the State Police investigator who took defendant's written statement (see People v Callicut, 101 AD3d 1256, 1258 n 1 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]; People v Jackson, 100 AD3d 1258, 1261 [3d Dept 2012], lv denied 21 NY3d 1005 [2013]). We also agree that such evidence falls under the recognized Molineux exception of evidence relating to identity, as defendant's vehicle was spotted at the scene and his Y-STR DNA was retrieved from a bottle found there (see People v Smith, 157 AD3d 978, 980 [3d Dept 2018], lv denied 31 NY3d 1087 [2018]; People v McCommons, 143 AD3d 1150, 1153 [3d Dept 2016], lv denied 29 NY3d 999 [2017]; People v Royster, 107 AD3d 1298, 1301 [3d Dept 2013], lv denied 22 NY3d 958 [2013]). In assessing whether the probative value of the evidence outweighed its prejudicial effect, Supreme Court engaged in the appropriate review and narrowed the admitted proof to minimize the potential for prejudice and, on this record, we find no abuse of discretion (see People v Hebert, 218 AD3d at 1009-1010; People v Smith, 157 AD3d at 980). Lastly, the court properly instructed the jury as to the limited purpose of this evidence prior to the codefendant's testimony, and it repeated such instruction when the codefendant began to testify about the Saratoga County robbery, again when the investigator began to testify about it and once more during its final charge to the jury (see People v Callicut, 101 AD3d at 1258 n 1; People v Mullings, 23 AD3d 756, 758-759 [3d Dept 2005], lv denied 6 NY3d 756 [2005]). Thus, Supreme Court properly allowed evidence of the Saratoga County robbery during the People's case-in-chief.
Defendant's remaining contentions, to the extent not expressly addressed herein, have been examined and lack merit.
Egan Jr., J.P., Pritzker, Fisher and [*7]Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The codefendant testified that, on the same day as the Dollar General robbery, defendant drove him to a Rite Aid, parked nearby and waited while the codefendant committed a robbery using the same ruse before returning to defendant's vehicle.

Footnote 2: Supreme Court admitted evidence of this Saratoga County robbery pursuant to a pretrial Molineux ruling that defendant challenges on appeal, which we address below.

Footnote 3: The tooth medication shoplifted from CVS and the clothing items stolen from Walmart served as the basis for defendant's petit larceny convictions.